# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TERRY CEASOR,

      Petitioner,                  Civil No. 5:08-CV-13641

                                      HONORABLE JOHN CORBETT O'MEARA

v.                                UNITED STATES DISTRICT JUDGE

JOHN OCWIEJA,

      Respondent,

_____/

## OPINION AND ORDER RESCINDING THE ORDER OF REFERENCE TO THE MAGISTRATE JUDGE [Dkt. 25], GRANTING MOTION TO FILE SUPPLEMENTAL AUTHORITY [Dkt. # 31], DENYING PETITION FOR WRIT OF HABEAS CORPUS, AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL IN FORMA PAUPERIS

Terry Ceasor, ("petitioner"), presently residing in Port Huron, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. [1]  In his application, filed by the Michigan Innocence Clinic, petitioner challenges his conviction for first-degree child abuse, M.C.L.A. 750.136b(2).  For the reasons stated below, the petition for writ of habeas corpus is **DENIED.**  The Court will also rescind the Order of Reference to

---

[1]  Petitioner was paroled in 2009 and discharged from his sentence in 2011.  The language of §§ 2241(c)(3) and 2254(a) require that a habeas petitioner be "in custody" under the conviction or sentence under attack at the time that a habeas petition is filed in the federal court. *See Maleng v. Cook,* 490 U.S. 488, 490-91 (1989).  Whether a petitioner is in custody for purposes of the habeas corpus statute is determined at the time that the petition is filed. *Sevier v. Turner*, 742 F. 2d 262, 268 (6th Cir. 1984).  Because petitioner was still serving his sentence at the time he originally filed his petition, he satisfies the "in custody" requirement of §§ 2241(c)(3) and 2254(a), in spite of his subsequent discharge.  Once federal jurisdiction has attached to a habeas petition in federal district court, "it is not defeated by the release of the petitioner prior to completion of proceedings" on his or her habeas application. *Carafas v. LaVallee,* 391 U.S. 234, 238 (1968).

1

United States Magistrate Judge. [2]  The Court will grant petitioner's motion to file supplemental authority. [3]

## I.  Background

Petitioner was convicted following a jury trial in the St. Clair County Circuit Court.

Petitioner's counsel has provided a detailed statement of facts in their brief in support of the petition for writ of habeas corpus.  Respondent has likewise provided a detailed factual summary of the case, which does not essentially conflict with petitioner's statement of facts.  The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Cristini v. McKee,* 526 F. 3d 888, 894, n. 1 (6th Cir. 2008)("When a state's return to a habeas corpus petition fails to dispute the factual allegations contained within the habeas petition, it essentially admits these allegations").  Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety.  Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

The victim in this case, Brenden Michael Genna, was the sixteen month old son of petitioner's girlfriend, Cheryl Genna.  On October 2, 2004, Genna left her son with

---

[2]  The Court signed an Order of Reference to United States Magistrate Judge dated November 28, 2012. The Court is rescinding the order in light of the fact that Magistrate Judge Paul J. Komives retired from the United States District Court for the Eastern District of Michigan effective January 6, 2015.

[3]  See Dkt. # 31.

2

petitioner at his home while she and her daughter went swimming.  When Cheryl Genna returned, petitioner was standing at the top of the stairs holding Brenden.  Petitioner told Genna that Brenden fell and hit his head and was now unconscious.  Genna testified that prior to that afternoon, Brenden had not fallen or received any bumps.  Genna and petitioner took Brenden to the Port Huron Hospital.  Brenden regained consciousness at the hospital and a decision was made to transfer him to Children's Hospital in Detroit, Michigan.

Genna admitted at trial that she lied to the investigating officers at the Port Huron Hospital, by telling them that she was present at petitioner's home when Brenden fell. Genna testified that she did not see any other injuries on Brenden while at Port Huron Hospital.  Genna claimed that during the ambulance ride to Children's Hospital, Genna observed an oval mark on the back of Brenden's head with red dots in the mark.  Genna then contradicted her earlier testimony by claiming she noticed a bite mark on Brenden's tongue while at Port Huron Hospital, but she admitted that she did not tell anyone at that hospital about it, nor could she recall telling anyone at Children's Hospital.  Genna eventually admitted to Detective Sandy Jacobson of the St. Clair County Sheriff's Department that she had not been at the house when the incident happened.  Genna later indicated on cross-examination that Brenden had previously fallen at daycare although she had earlier testified that he had never fallen.

Dr. Christopher Hunt was the doctor who treated Brenden when he was brought into the emergency room at the Port Huron Hospital.  Brenden was an unresponsive child

3

when he came into the hospital, although his vital signs were stable and he was breathing. Dr. Hunt did not observe any signs of trauma. After the CAT scan was completed, Dr. Hunt did a complete examination of Brenden's body, looking for trauma or any sign of what caused the injury. Dr. Hunt did not recall seeing any such injuries. The CAT scan showed a subdural hematoma with a slight mass effect. The decision was made to send Brenden to a hospital with a pediatric neurosurgeon.

Dr. Hunt spoke to petitioner twice. The first time, petitioner told Dr. Hunt that Brenden had fallen off a couch, hit his head on a table, and became unresponsive. During their second discussion, petitioner told Dr. Hunt he did not know how the injury happened.

In addition to the fact that petitioner had changed stories, Dr. Hunt was also troubled by the lack of external trauma, particularly soft tissue injury, which one would expect to see if the victim had fallen off the couch and had hit his head against a hard object.

Petitioner told two different statements to the police. In both statements, petitioner indicated that the victim had fallen off a couch and had hit his head. However, in the first statement, petitioner indicated that Cheryl Genna was present when the victim was injured while in the second statement, petitioner admitted that Cheryl was not present when the accident happened.

Dr. Holly Gilmer-Hill was qualified as an expert in the field of pediatric neurosurgery and Shaken Baby Syndrome. Dr. Gilmer-Hill was Brenden's attending

4

physician at Children's Hospital.  Dr. Gilmer-Hill spoke to Cheryl Genna when Brenden was admitted.  Genna told Dr. Gilmer-Hill that she had been told Brenden fell from a couch.  Genna did not tell Dr. Gilmer-Hill about any earlier fall.  When Gilmer-Hill examined Brenden, she did not observe any external bruising or swelling of the scalp.  The  CAT scan revealed a subdural hemorrhage with some brain swelling with shift.  Dr. Gilmer-Hill testified that this is considered a serious injury.

On October 6, 2004, Gilmer-Hill examined Brenden a second time.  Brenden had been examined by an ophthalmologist who discovered retinal hemorrhages in both of Brenden's eyes.  Dr. Gilmer-Hill testified that it took a good deal of force to cause retinal bleeding.  Dr. Gilmer-Hill opined that the combination of subdural blood with retinal hemorrhage is diagnostic for child abuse.  Dr. Gilmer-Hill indicated that retinal hemorrhage is caused by "By severally being shaken or slammed onto a surface, either hard or soft.  Usually repeatedly."  Based on her training and experience and her treatment of Brenden, Gilmer-Hill did not believe his injuries were the result of an accident.  Dr. Gilmer-Hill further testified that a fall from a couch onto a carpeted floor could not have caused these type of severe injuries.

On cross-examination, petitioner's trial counsel confronted Dr. Gilmer-Hill with articles by John Plunkett, M.D. and Jennian Geddes, M.D. which claim that the accepted mechanism of Shaken Baby Syndrome is incorrect.  Petitioner's counsel also questioned Dr. Gilmer-Hill about whether Brenden's recent vaccinations may have caused the subdural bleeding.  Dr. Gilmer-Hill disagreed with both positions.  Dr. Gilmer-Hill noted

5

that Plunkett's theory was inconsistent with "the body of evidence that's out there." Dr. Gilmer-Hill also disagreed with the idea that a child can suffer a severe injury like this and be lucid for up to two days before the injury begins to have an effect. Dr. Gilmer-Hill believed hat the time would be "several hours," at most, and not even that long when the injury produced both a subdural hematoma and retinal hemorrhaging. Dr. Gilmer-Hill believed that this type of severe trauma would cause symptoms to appear immediately. When challenged on the force of a fall as opposed to shaking, Gilmer-Hill testified that a fall from five or six feet would have much less force than a shaking. Dr. Gilmer-Hill believed that it would take a fall of 20 to 30 feet to create the same force.

Defense counsel also questioned Dr. Gilmer-Hill about whether a subdural hematoma can "re-bleed," that is, heal and then, from some type of trauma, begin to bleed again. Dr. Gilmer-Hill explained that this occurred when a scar formed "within the capsule that was surrounding the hemorrhage and then blood develops, have grown into that scar and they are friable, so they can spontaneously bleed not due to trauma, but just spontaneously re-bleeding." She also observed that both old and new blood would be observable within the space. Dr. Gilmer-Hill had testified earlier that the blood shown by the CAT scan from Port Huron Hospital was fresh, indicating that the injury had occurred very closely to the time Brenden was taken to the hospital.

Defense counsel also confronted Gilmer-Hill with articles by Gregory Reiber, M.D., and Irving Root, M.D. , which claimed children could receive injuries causing brain swelling and how short falls with rotational force can cause G-forces equivalent to

6

long falls, respectively.  Dr. Gilmer-Hill admitted she was not familiar with either article, but noted that her professional reading was in the neurosurgical field.  Dr. Gilmer-Hill noted that both doctors were forensic pathologists, a specialty that did not take care of patients with head injuries.  Dr. Gilmer-Hill stated she did not believe that there were experts in the field of neurosurgery who believed that a two foot fall onto carpet would cause a severe head injury with bleeding and within the brain.

Petitioner testified in his own behalf.  Petitioner denied abusing or shaking the victim, claiming that the victim had fallen off a couch.  Petitioner admitted to lying to the police.

Petitioner was convicted and sentenced to 2-15 years in prison.

On direct appeal, petitioner's appellate counsel raised a claim that trial counsel was ineffective for failing to call an expert witness on Shaken Baby Syndrome to rebut Dr. Gilmer-Hill's diagnosis.  Appellate counsel did not separately move for a *Ginther* hearing on the ineffective assistance of trial counsel claim. [4]

Petitioner's conviction was affirmed on appeal. *People v. Ceasor*, No. 268150, 2007 WL 2011747 (Mich. Ct. App. July 12, 2007); *lv. den*. 480 Mich. 926, 740 N.W.2d 257 (2007).

Petitioner filed a petition for writ of habeas corpus, which was held in abeyance while petitioner returned to the state courts to exhaust an additional claim.

---

[4] *People v. Ginther*, 390 Mich. 436, 443; 212 N.W. 2d 922 (1973).

Petitioner filed a post-conviction motion for relief from judgment, which was denied. *People v. Ceasor*, No. A-05-000220-FH (St. Clair County Cir. Ct. May 11, 2011); *reconsideration den.* No. A-05-000220-FH (St. Clair County Cir. Ct. June 3, 2011). The Michigan appellate courts denied petitioner leave to appeal. *People v. Ceasor*, No. 304703 (Mich. Ct. App. Oct. 4, 2011); *lv. den*. 491 Mich. 908, 810 N.W.2d 578 (2012).

On June 20, 2012 counsel for petitioner filed a second amended petition. On July 19, 2012, this Court ordered Respondent to file an answer to the second amended petition.

In his second amended petition, petitioner seeks a writ of habeas corpus on the following ground:

> MR. CEASOR RECEIVED INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL IN VIOLATION OF THE 14TH AMENDMENT WHEN HIS APPELLATE COUNSEL ON DIRECT APPEAL FAILED TO MOVE THE MICHIGAN COURT OF APPEALS FOR A REMAND FOR THE EVIDENTIARY HEARING NECESSARY TO ESTABLISH THE INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL CLAIM THAT APPELLATE COUNSEL ATTEMPTED TO RAISE ON DIRECT APPEAL.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

8

(2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

However, when a state court fails to adjudicate a habeas petitioner's claim on the merits, a federal court is required to review that claim *de novo. See McKenzie v. Smith,* 326 F. 3d 721, 726 (6th Cir. 2003). Petitioner raised his habeas claim as a federal constitutional claim in his motion for relief from judgment. In rejecting the motion, the trial court failed to address the merits of petitioner's claim, instead dismissing the claim pursuant to M.C.R. 6.508(D)(2) on the erroneous ground that the claim had already been raised and decided against petitioner by the Michigan Court of Appeals on direct review. In this case, "there are simply no results, let alone reasoning, to which this court can defer. Without such results or reasoning, any attempt to determine whether the state court decision 'was contrary to, or involved an unreasonable application of clearly established Federal law,' 28 U.S.C. § 2254(d)(1), would be futile." *Id.* Accordingly, this Court will review petitioner's claim *de novo.*

### III. Discussion

Petitioner claims that appellate counsel was ineffective for failing to move for a *Ginther* hearing, in order to create a record sufficient to establish his ineffective assistance of trial counsel claim. Although petitioner's appellate counsel did request an evidentiary hearing, he did so only within the body of his appellate brief. According to petitioner's counsel, a criminal defendant in Michigan is required to bring a separate

9

motion for remand in order to obtain an evidentiary hearing in the trial court on the

ineffective assistance of trial claim.  Petitioner argues that because appellate counsel did

not properly move for an evidentiary hearing on his ineffective assistance of trial counsel

claim, the Michigan Court of Appeals rejected petitioner's ineffective assistance of trial

counsel claim on the ground that there was insufficient evidence to support such a claim.

To show that he was denied the effective assistance of counsel under federal

constitutional standards, a defendant must satisfy a two prong test.  First, the defendant

must demonstrate that, considering all of the circumstances, counsel's performance was

so deficient that the attorney was not functioning as the "counsel" guaranteed by the

Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the

defendant must overcome a strong presumption that counsel's behavior lies within the

wide range of reasonable professional assistance. *Id*.  In other words, petitioner must

overcome the presumption that, under the circumstances, the challenged action might be

sound trial strategy. *Strickland,* 466 U.S. at 689.  Second, the defendant must show that

such performance prejudiced his defense. *Id*.  To demonstrate prejudice, the defendant

must show that "there is a reasonable probability that, but for counsel's unprofessional

errors, the result of the proceeding would have been different." *Strickland,* 466 U.S. at

694.  "*Strickland*'s test for prejudice is a demanding one. 'The likelihood of a different

result must be substantial, not just conceivable.'" *Storey v. Vasbinder*, 657 F.3d 372, 379

(6th Cir. 2011)(quoting *Harrington v. Richter*, 131 S. Ct. 770, 792 (2011)).  The Supreme

Court's holding in *Strickland* places the burden on the defendant who raises a claim of

10

ineffective assistance of counsel, and not the state, to show a reasonable probability that the result of the proceeding would have been different, but for counsel's allegedly deficient performance. *See Wong v. Belmontes*, 558 U.S. 15, 27 (2009). The *Strickland* standard applies as well to claims of ineffective assistance of appellate counsel. *See Whiting v. Burt,* 395 F. 3d 602, 617 (6th Cir. 2005).

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

Petitioner is not entitled to habeas relief on this claim for several reasons. First, appellate counsel's decision to raise the ineffective assistance of trial counsel claim without separately requesting an evidentiary hearing was a "reasonable recognition that the allegations of ineffective assistance could be determined from the trial transcript alone. No additional evidence was really necessary for the [appellate] court to make a fair determination of the sixth amendment issue." *Young v. Miller,* 883 F. 2d 1276, 1280 (6th Cir. 1989). Indeed, appellate counsel argued in his appeal brief that trial counsel's ineffectiveness in failing to present an expert on Shaken Baby Syndrome was obvious from the record, especially where trial counsel had indicated prior to trial that he was going to retain an expert. Appellate counsel also noted in his brief that even though trial counsel was retained, he could have petitioned the trial court to appoint an expert at court expense if petitioner no longer had funds to retain an expert, as petitioner currently

11

alleges was the reason behind why an expert was not retained. [5]  Petitioner has failed to show that appellate counsel was deficient for failing to seek a separate hearing on petitioner's ineffective assistance of trial counsel claim.

Moreover, assuming that appellate counsel was ineffective for failing to move for a *Ginther* hearing, petitioner was not prejudiced by appellate counsel's failure to do so because petitioner is unable to show that a *Ginther* hearing would have been granted or that the Michigan Court of Appeals would have reversed his conviction had such a hearing been held, because petitioner has failed to show that the Michigan Court of Appeals would have found trial counsel to be ineffective.

First, trial counsel did consult with an expert witness in this case, Dr. Faris Bandak.  Although petitioner claims that trial counsel did not retain Dr. Bandak because petitioner had run out of funds to retain this expert, petitioner has never obtained affidavits from either petitioner's trial counsel or from Dr. Bandak indicating what Dr. Bandak's proposed testimony would have been.  While petitioner now has additional experts whom he claims would testify on his behalf that the victim's injuries were not the result of child abuse, there is no indication that Dr. Bandak would have testified favorably for petitioner.  "Effective assistance does not require counsel to continue contacting experts until he found one...willing to testify against the prosecution's theory of the case." *Flick v. Warren*, 465 Fed. Appx. 461 465 (6th Cir. 2012)(petitioner's

---

[5] *See* Appellant's Brief on Appeal, pp. 6-11 [this Court's Dkt. # 7-11].

counsel in a second-degree murder prosecution was not ineffective for failing to call an expert to challenge the science underlying Shaken Baby Syndrome, after counsel had contacted three doctors seeking help with the case and had received unfavorable responses from all three).

Secondly, although trial counsel did not present an expert on Shaken Baby Syndrome, trial counsel extensively cross-examined Dr. Gilmer-Hill about her findings and confronted her with literature from a number of doctors, including from several experts whom petitioner claims supports his position, which challenge the science on Shaken Baby Syndrome.  The Supreme Court has noted that: "[I]n many instances cross-examination will be sufficient to expose defects in an expert's presentation." *Harrington v. Richter,* 131 S. Ct. at 791.  Defense counsel's decision to cross-examine Dr. Gilmer-Hill to challenge her diagnosis, instead of calling an expert witness for the defense to challenge her claim that this was a shaken baby case, was a reasonable trial strategy that defeats petitioner's ineffective assistance of trial counsel claim. *See Tinsley v. Million,* 399 F.3d 796, 806 (6th Cir. 2005); *See also Jackson v. McQuiggin,* 553 Fed. Appx. 575, 580-82 (6th Cir. 2014); *Stevens v. U.S.,* 298 F. Supp. 2d 657, 660-61 (E.D. Mich. 2004).

Moreover, trial counsel's failure to call a defense expert to refute Dr. Gilmer-Hill's diagnosis was not ineffective, in light of the additional evidence in this case which called into question petitioner's claim that the victim had fallen off the couch.  First, both petitioner and Cheryl Genna told several inconsistent stories to the police, which called

13

into question their credibility.  Secondly, Dr. Hunt and Dr. Gilmer-Hill both noted a lack of any external trauma or soft tissue injury, which they both testified would be found if a child received the type of injury described by petitioner.  Because there was no reasonable probability that the result of the trial would have been different had Dr. Gilmer-Hill's testimony been challenged, appellate counsel's alleged deficiency in failing to properly raise trial counsel's failure to present an expert on Shaken Baby Syndrome would not entitle petitioner to relief. *See Lutze v. Sherry*, 392 Fed. Appx. 455, 459-60 (6th Cir. 2010).

In light of the fact that petitioner's ineffective assistance of trial counsel claim is without merit, petitioner is unable to establish that he was prejudiced by appellate counsel's failure to request a *Ginther* hearing. *See e.g. Davis v. Booker,* 594 F. Supp. 2d 802, 831 (E.D. Mich. 2009); *rev'd on other grds,* 589 F. 3d 302 (6th Cir. 2009).

Finally, petitioner is unable to show that he was prejudiced by appellate counsel's failure to request a *Ginther* hearing on his ineffective assistance of trial counsel claim, in light of the fact that petitioner raised the same ineffective assistance of trial counsel claim with a request for a *Ginther* hearing to the Michigan trial and appellate courts on petitioner's post-conviction motion for relief from judgment, which was rejected by these courts. *See Hollin v. Sowders*, 710 F. 2d 264, 265-67 (6th Cir. 1983); *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1096 (E.D. Mich. 2004); *Bair v. Phillips,* 106 F. Supp. 2d 934, 938, 943 (E.D. Mich. 2000); *See also U.S. ex rel. Malone v. Uchtman* 445 F. Supp.2d 977, 989-90 (N.D. Ill. 2006)(petitioner was not prejudiced by appellate

14

counsel's failure to raise claim on direct appeal because, as shown by state post-conviction court's rejection of claim, petitioner would not have fared better if underlying claims had been raised on direct appeal).  The state courts' rulings on petitioner's motion for post-conviction relief granted petitioner an adequate substitute for direct appellate review and therefore his appellate attorney's failure to properly raise his ineffective assistance of trial counsel claim in petitioner's appeal of right did not cause him any injury. *Bair,* 106 F. Supp. 2d at 943 (citing *Gardner v. Ponte*, 817 F. 2d 183, 189 (1ˢᵗ Cir. 1987)).  In this case, there is no point in remanding this case to the state courts to reconsider a case that they have already adversely decided. *Gardner*, 817 F. 2d at 189. Petitioner is not entitled to relief on his claim.

## IV.  Conclusion

The Court will deny the petition for writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at

15

484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *See Allen v. Stovall,* 156 F. Supp. 2d 791, 798 (E.D. Mich. 2001).

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED that the Order of Reference to the Magistrate Judge [Dkt. # 25] is **RESCINDED.**

IT IS FURTHER ORDERED that the motion to file supplemental authority [Dkt. # 31] is **GRANTED.**

IT IS FURTHER ORDERED that a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

s/John Corbett O'Meara<br>United States District Judge

Date: January 13, 2015

16

       I hereby certify that a copy of the foregoing document was served upon the parties of record on this date, January 13, 2015, using the ECF system and/or ordinary mail.

<br/>

s/William Barkholz
Case Manager

17